McGee *v.* Smith.

CATHARINE McGEE *vs.* JOHN SMITH.

1. The title of a purchaser under a sheriff's sale, is co-extensive with the description contained in the mortgage, the bill to foreclose, and the writ of *fieri facias* under which the sale was made.

2. It is not necessary that the decree should describe the premises precisely; it is usual to designate them in the decree by reference to the bill.

3. A party to a foreclosure suit is bound by the decree, and cannot con-

McGee *v.* Smith.

test the title of the purchaser under it, while the decree and the sale and conveyance remain in force.

4. Where a defendant has filed an answer to a bill to foreclose, a purchaser at a sheriff's sale under the decree, is presumed to have purchased upon the faith of that answer, and in reliance upon the truth of its statements. Such defendant is estopped from denying the truth of the answer, to the prejudice of the purchaser's title.

5. An injunction will not be continued for the mere purpose of restraining a naked trespass, or for the purpose of quieting the possession of a complainant who shows no title to the premises in dispute.

6. The filing of exceptions to the answer constitutes no objection to the dissolution of an injunction, if the equity of the bill upon which the injunction rests has been fully answered.

The complainant, by her bill, alleges that her husband, Hugh McGee, in his lifetime, was seized in fee of a parcel of land in Jersey City, which, on a map of the lands of Cornelius Van Vorst, filed in the clerk's office of the county of Hudson, on the 24th of April, 1847, was known and distinguished as lots numbered twelve and thirteen, on block sixty-three, fronting on the northerly side of Railroad avenue, and being fifty feet wide in front and rear, subject to a mortgage given by McGee and wife to Cornelius Van Vorst, to secure the sum of $1175, a part of the purchase money of said premises. That, being so seized, McGee in his lifetime built two houses on the land, which, together, covered the entire front of fifty feet on the avenue. That the westerly house is twenty-eight feet in width, and covers the whole front of lot number twelve, and three feet of lot number thirteen; and that the easterly house, on lot number thirteen, is only twenty-two feet in width. That the houses are three stories high, and have a party wall between them, from the foundation to the roof. That McGee, during his life, occupied the westerly house as his mansion or homestead, the other house being occupied by tenants. He died on the 12th of December, 1861. By his will he devised the house and lot on Railroad avenue, numbered two hundred and twenty, to the complainant during her natural life, in lieu of dower, and on her death, to his daughter Hannah; and the house and lot num-

bered two hundred and eighteen, to his son, Hugh McGee; the house and lot devised to the complainant, being the house and lot above described as the homestead of Hugh McGee, consisting of lot number twelve, and a part of lot number thirteen. After the death of her husband, the complainant continued in the occupation of the whole of the house and premises devised to her by the will of her husband.

A bill having been filed in this court for the foreclosure of the mortgage upon the said premises, given by McGee to Van Vorst, a decree was made, by which it was directed that the house and lot devised to Hugh McGee, being lot number two hundred and eighteen, should be first sold to satisfy the mortgage, and that the remainder, being lot number two hundred and twenty, which was devised to the complainant for life, after the termination of the life estate, should be next sold for that purpose. At the sheriff's sale under the decree, Smith became the purchaser of lot number two hundred and eighteen. No sale was made of the complainant's life interest in lot number two hundred and twenty.

The bill charges that the defendant claims title, by virtue of his purchase, to twenty-five feet front, including three feet upon which the complainant's house stands, and has entered upon the premises for the purpose of changing the partition wall between the houses; and prays that the complainant may be quieted in her possession, and the defendant restrained from destroying the party wall, or doing other injury to the complainant's premises, or taking possession of any part thereof by force. An injunction issued pursuant to the prayer of the bill. The defendant, having answered, asks a dissolution of the injunction.

*McClelland*, for the defendant, in support of the motion.

The answer meets every material averment.

The injunction may be dissolved, though the answer do not fully meet the averments of the bill. *Quackenbush* v. *Van Riper*, *Saxton* 476, 488.

*Ransom*, for the complainant, contra.

The answer is not fully responsive to the averments of the bill.

A court of equity will restrain irreparable mischief until right be decided at law.

THE CHANCELLOR. The controversy depends entirely upon the title which Smith acquired by his purchase at the sheriff's sale, under the decree of foreclosure. That right, whatever it may be, is paramount to any title which the complainant could acquire under the will of her husband. The complainant, by her bill, alleges that the decree of foreclosure directed that lot number two hundred and eighteen, being the lot devised to Hugh McGee, the son of the testator, should be first sold, and that Smith became the purchaser of that lot. This fact is denied by the answer. It appears that the decree in the foreclosure suit makes no mention of the numbers two hundred and eighteen or two hundred and twenty, which are the city numbers used to designate the houses on the avenue, but describes the lots as " numbers twelve and thirteen, on block sixty-three, as they are known and designated on Van Vorst's map." Those lots are described in the mortgage and in the bill to foreclose, as being each twenty-five feet in width. The sale and conveyance by the sheriff to Smith, was made in accordance with the original division and description of the lots on the Van Vorst map, and not in pursuance of any subsequent arrangement of the lots made by McGee, and recognized in his will. In the original division of the lots on the Van Vorst map, and in the mortgage from McGee to Van Vorst, under which the foreclosure and sale was made, lot number thirteen, which was sold to Smith, is described as being twenty-five feet in width. That is the description of the lot in the bill to foreclose, and in the writ of *fieri facias*, by virtue of which the sale was made. Whether the width of the lot is stated in the decree or not, is immaterial. It is usual to designate the premises in the decree by reference to the bill, not by precise

description.   Catharine McGee, the complainant, was a party to the foreclosure suit, and is bound by it.   While that decree, and the sale and conveyance under it, remain in force, she cannot contest the title of the purchaser.

Catharine McGee was not only a party to the foreclosure suit, and bound by the decree, but she filed an answer, claiming to have her life estate in the lot devised to her by her husband, recognized and protected.   By her answer she avers that the house and lot devised to her as lot number two hundred and twenty, on Railroad avenue, is the same house and lot described in the Van Vorst mortgage as lot number twelve, and that the house and lot devised to Hugh McGee, as lot number two hundred and eighteen, on Railroad avenue, is the same house and lot mentioned and described in the Van Vorst mortgage as lot number thirteen.   She now asks relief upon the ground that the answer is erroneous in stating that those lots are identical, and that, in fact, the lot devised to her is larger than lot number twelve, and that the lot conveyed to Smith is less than lot number thirteen.   Whether the lots are, in fact, identical, is a disputed fact in this case. But admitting that they are different, and that the allegation in the answer, of their identity, is a mistake, Catharine McGee cannot, in equity, be relieved against the title of Smith, on the ground of that mistake.   She is estopped from denying the truth of her answer.   If there were no other ground of defence, Smith would be presumed, as against the claim of Catharine McGee, to have purchased upon the faith of her answer, and in reliance upon the truth of its statements. She cannot gainsay her own statements to the prejudice of his title.

The injunction cannot be continued for the mere purpose of restraining a naked trespass, nor for the purpose of quieting the possession of the complainant, where she shows no right to the premises in dispute.   2 *Eden on Inj.* 390.

The filing of exceptions to the answer constitutes no objection to the dissolution of the injunction, if the equity of the bill upon which the injunction rests has been fully an-

McGee *v.* Smith.

swered. 1 *Barb. Ch. Pr.* 642 ; *Livingston* v. *Livingston,* 4 *Paige* 111 ; *Robert* v. *Hodges, ante, p.* 299.

The exceptions, so far as they relate to the points of the case upon which the injunction rests, are formal, rather than substantial. It is obvious that the case made by the bill, is not in accordance with the truth and facts as they really exist, and that all the complainant's equity is fully denied by the answer.

The injunction must be dissolved.